UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE MOLINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 08 C 4399 |
| | ) |
| BAST SERVICES, INC., and | ) Judge George M. Marovich |
| THE FOUNDATION FOR ALZHEIMER'S | ) |
| AND CULTURAL MEMORY, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

The Court previously granted plaintiff Joyce Molino ("Molino") summary judgment on four counts against defendant Bast Services, Inc. ("Bast Services").[1] She now moves for summary judgment with respect to damages. For the reasons set forth below, the Court grants in part and denies in part plaintiff's motion for summary judgment.

**I.     Background**

Included with plaintiff's motion was the statement of material facts required by Local Rule 56.1. In response, defendant filed a brief outlining reasons why it believes the motion should be denied. Defendant did not, however, file either a response to plaintiff's statement of facts or its own statement of additional facts. Local Rule 56.1 of the Local Rules for the Northern District of Illinois requires a party moving for summary judgment to file a statement of material facts as to which the movant contends there is no genuine issue. *See* Local Rule 56.1(a)(1)(3). The non-moving party must file a response to the moving party's statement of facts. *See* Local Rule 56.1(b). Pursuant to Local Rule 56.1(b), "[a]ll material facts set forth in

---

[1]Plaintiff had already settled with the other defendant, the Foundation for Alzheimer's and Cultural Memory.

the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *See* Local Rule 56.1(b)(3)(C); *see also Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Cracco v. Vitran*, 559 F.3d 625, 632 (7th Cir. 2009) (approving the practice of requiring strict compliance with Local Rule 56.1). Because defendant failed to file a response to plaintiff's statement of facts, defendant failed to controvert plaintiff's statement of facts. Accordingly, the Court deems admitted all of the facts in plaintiff's statement of facts. The following facts are undisputed.

Before her employment at Bast Services was terminated, Molino earned an annual salary of $51,000.00. Bast Services terminated Molino's employment on November 17, 2006.

As a direct result of the termination of her employment with Bast Services, Molino suffered emotional distress. For example, Molino suffered shock, confusion, panic, anxiety, stress, depression, loss of appetite followed by weight gain, severe sleeplessness, crying jags, humiliation, embarrassment, panic attacks, headaches and loss of self esteem and self worth. After her discharge, Molino felt betrayed, because she had been lured away from a stable, good-paying job at Alden Town Manor in order to work for Bast Services. Molino felt anger, because Bast Services contested her claim for unemployment insurance by fabricating performance issues. Molino felt outrage, because Bast Services terminated her employment due to Molino's having done what Molino considered to be the ethical thing to do: blowing the whistle on a former employer. Molino's emotional distress continued for years until Molino obtained her current position at Lexington Health Care Center in May 2009.

In an attempt to find comparable employment, Molino has held several positions since her employment with Bast Services ended. From February 12, 2007 through May 24, 2007, Molino earned $11,700.00 as the Alzheimer/Dementia Care Coordinator at West Suburban Care Center. From July 5, 2007 through June 23, 2008, Molino earned approximately $39,000.00

working as the Social Service Director at Asta Care Center of Elgin. Since May 12, 2009, Molino has worked as the Memory Care Manager at Lexington Health Care Center of Streamwood, Illinois. In that position, Molino earns an annual salary of $43,000,00.

In the meantime, Molino lost her home to foreclosure. In the months after Bast Services terminated her employment, Molino had no earnings. In addition, because Bast Services contested her claim for unemployment compensation, Molino did not receive unemployment compensation. Molino was unable to make her mortgage payments. By April 2007, the bank from which Molino borrowed the money to pay for her house began foreclosure proceedings. By June 2008, the house had been sold at auction. Molino believes she lost $41,528.82 in home equity.

## II. **Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

The Court previously granted plaintiff Molino summary judgment on her four claims. Molino prevailed on her common-law claim for retaliatory discharge; her claim under the Illinois Whistleblower Act, 740 ILCS 174/15; her claim for retaliatory discharge under the False Claims Act, 30 U.S.C. § 3730(h); and her claim for retaliatory discharge under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/4(g). The Court now considers the appropriate remedy. Under the False Claims Act, a successful plaintiff:

> shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h). The Illinois Whistleblower Reward and Protection Act contains similar language. It states:

> (g) Relief from retaliatory actions.
>
> (1) In general, any employee, contractor, or agent is entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent or associated others in furtherance of other efforts to stop one or more violations of this Act.
>
> (2) Relief under paragraph (1) shall include reinstatement with the seniority status that the employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

740 ILCS 175/4(g). Under the Illinois Whistleblower Act, a successful plaintiff is entitled to "all relief necessary to make the employee whole," including "backpay, with interest" and "compensation for any damages sustained as a result of the violation, including litigation costs expert witness fees, and reasonable attorney's fees." 740 ILCS 174/30.

### A. Back pay

Plaintiff seeks back pay in the amount of $89,025.00. Molino calculates that, had she remained employed by Bast Services, she would have earned $209,242.00 between the date Bast Services terminated her employment and the date of judgment. During that time period, Molino actually earned $120,217.00. Molino requests the difference as back pay.

Defendant argues (without citation) that back pay should be calculated only until Molino obtained her next job (in February 2007), rather than to the date of judgment. The Court disagrees. The three statutes defendant violated explicitly state that plaintiff is to be made whole. 31 U.S.C. § 3730(h); 740 ILCS 175/4(g)(1); 740 ILCS 174/30. The starting point for doing so is to find out how much plaintiff would have earned at Bast Services until the date of judgment. *See Gedmin v. North Amer. Safety Products, Inc.*, Case No. 08-0337, 2010 WL 4539447 at *2 (N.D. Ill. Nov. 3, 2010); *McCoy v. Oscar Mayer Foods*, Case No. 92 C 8376, 1998 WL 26177 at *4 (N.D. Ill. Jan. 15, 1998) ("In general, back pay begins to accrue when the plaintiff first loses wages due to the discrimination at issue, and it ends on the date of judgment."). Of course, Molino, like all plaintiffs, had a duty to mitigate her damages by exercising reasonable diligence in finding new employment, but mitigation of damages is an affirmative defense on which *defendant* has the burden of proof. *Gaffney v. Riverboat Serv. of*

*Ind.*, 451 F.3d 424, 460 (7th Cir. 2006) ("because the lack of mitigation is an affirmative defense, the burden of proof for this issue falls on the employer.").

In order to prove that Molino failed to mitigate her damages, Bast Services must prove that: "(1) the plaintiff failed to exercise reasonable diligence to mitigate her damages; and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). Bast Services failed to submit *any* evidence on the issue of mitigation. Bast Services argues that it would be "speculative" to award back pay for periods of time after Molino left her first post-Bast position. It was Bast Services' burden, however, to prove that Molino left those positions under circumstances that would suggest Molino had failed to mitigate her damages. *See United States v. City of Chi.*, 853 F.2d 572, 579 (7th Cir. 1988) (discussing when leaving interim employment constitutes failure to mitigate). Bast Services failed to do so.

The Court finds that Molino is entitled to back pay in the amount of $89,025.00. Under the False Claims Act and the Illinois Whistleblower Reward and Protection Act, Molino is entitled to two times the amount of her back pay. 31 U.S.C. § 3730(h); 740 ILCS 175/4(g)(2). Accordingly, the Court awards Molino $178,050.00.

**B.**  **Interest on back pay**

Each of the three statutes under which Molino prevailed explicitly grants her the right to collect interest on back pay. 31 U.S.C. § 3730(h); 740 ILCS 175/4(g)(2); 740 ILCS 174/30. Molino asks for interest in the amount of $10,993.00, which she calculated quarterly using the rates published by the United States Department of Labor (which adopts the rates used by the Internal Revenue Service for interest on underpayments) for use in calculating back pay.

Defendant does not object to this formula, and the Court adopts it. Accordingly, the Court awards interest on the back pay in the amount of $10,993.00.[2]

### C. Emotional distress

Next, Molino seeks damages for her emotional distress in the amount of $40,000.00. Under the False Claims Act, Molino is entitled to be compensated for any "special damages." 31 U.S.C. § 3730(h). Special damages under the False Claims Act include damages for emotional distress. *Neal v. Honeywell Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ("If loss of income from employment is the usual consequence, then emotional distress must be the unusual one, and hence compensable as special damages.").

Defendant objects that plaintiff should not be entitled to emotional distress damages without medical evidence. Courts, however, allow damages for emotional distress based solely on the testimony of the plaintiff. *Marion Cty. Coroner's Office v. EEOC*, 612 F.3d 924, 930-931 (7th Cir. 2010) ("'An award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony.'") (quoting *Tullis v. Townley Engineering & Mfg. Co., Inc.*, 243 F.3d 1058, 1068 (7th Cir. 2001)); *Avitia v. Metropolitan Club of Chi.*, 49 F.3d 1219, 1227 (7th Cir. 1995) (allowing compensatory damages for emotional distress where plaintiff's brief testimony "was the only evidence about a possible nonpecuniary loss from the retaliatory discharge.").

---

[2]The Court notes that this award should not be thought of as prejudgment interest, which would not be appropriate in a case, such as this, where back pay is doubled. *Fortino v. Quasar Co.*, 950 F.2d 389, 397-398 (7th Cir. 1991). Rather, this is the interest on back pay explicitly granted by the statutes under which plaintiff prevailed.

An award for emotional distress damages is appropriate if there is a rational connection between the award and the evidence and should be similar to awards in similar cases. *See Marion Cty. Coroner's Office v. EEOC*, 612 F.3d at 930-931. Still, "[j]udges and juries should not be casual with other people's money." *Avitia*, 49 F.3d at 1229. In *Marion Cty.*, the plaintiff testified that he attending weekly therapy sessions for several months for depression. *Marion Cty.*, 612 F.3d at 931. The Seventh Circuit remitted the jury's award of $200,000.00 to $20,000.00. *Marion Cty.*, 612 F.3d at 931. In *Schandelmeier-Bartels v. Chi. Park Dist.*, the Seventh Circuit remitted an award of $200,000.00 to $30,000.00 in a race discrimination case. *Schandelmeier-Bartels v. Chi. Park Dist.*, __ F.3d __, __, 2011 WL 383021 at *13-15 (7th Cir. 2011). The plaintiff, after witnessing and reporting to the police what she believed was child abuse, was subjected by her supervisor to a racist tirade (the likes of which she had never before experienced) and then discharged. The plaintiff testified that she had been disturbed, devastated and upset. The Seventh Circuit noted that she could not be awarded damages for the distress she experienced from witnessing the child abuse, because that was not actionable under Title VII. *Id.* at *13. The Seventh Circuit concluded that any award above $30,000.00 would have been excessive. *Id.* at *13. Higher awards have been found acceptable only rarely. For example, a higher award was not excessive where a plaintiff was subjected to physical threats from which even her employer feared it could not protect her. *Neal v. Honeywell*, 191 F.3d 827, 832 (7th Cir. 1999). The Court interprets these cases as creating a ceiling above which awards are excessive, not as creating a floor below which awards are insufficient.

Here, Molino suffered shock, confusion, panic, anxiety, stress, depression, loss of appetite followed by weight gain, severe sleeplessness, crying jags, humiliation, embarrassment,

-8-

panic attacks, headaches and loss of self esteem and self worth. After her discharge, Molino felt betrayed, because she had been lured away from a stable, good-paying job at Alden Town Manor in order to work for Bast Services. Her distress lasted for years, until she obtained her current position. Considering similar cases and taking seriously the admonishment not to be casual with someone else's money, the Court awards Molino $25,000.00 for her emotional distress.

### D. Loss of home equity

Plaintiff wants the Court to award her damages for the home equity she lost when she stopped paying her mortgage and lost her home in foreclosure. Plaintiff does not cite a single case for the proposition that this is an appropriate measure of damages. The Court has not found a single case where a court has awarded damages for the loss of home equity on any of the claims on which plaintiff prevailed. The Court declines to be the first. Furthermore, even if there were legal support for the proposition, the Court still would not grant the damages in this case because such an award would be speculative. It is not clear how much of the equity was lost due to the general decline in the housing market at the time plaintiff's home was in foreclosure proceedings. In addition, if any equity remained after paying the bank what it was owed (in principal and interest) and the costs of foreclosure, plaintiff would have been given that amount. If plaintiff did not receive any, that suggests plaintiff had no equity.

### E. Punitive damages

Next, plaintiff seeks punitive damages in the amount of $60,000.00 on her common-law retaliatory discharge claim.

The Illinois Supreme Court disfavors punitive damages. *Brandon v. Anesthesia & Pain Mgt. Assoc., LTD.*, 277 F.3d 936, 946 (7th Cir. 2002). They may be awarded, however, where

"torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Brandon*, 277 F.3d at 946 (quoting *Kelsay v. Motorola, Inc.*, 23 Ill.Dec. 559, 384 N.E. 2d 353, 359 (Ill. S.Ct. 1978). In *Brandon*, the Seventh Circuit concluded that punitive damages were appropriate, because the employer fabricated complaints about plaintiff's job performance, took steps to prevent him from filing suit and threatened to make it difficult for him to find another job. *Brandon*, 277 F.3d at 946-947 ("These kinds of threats, harassment, and coercive tactics show a wilful and wanton disregard for [plaintiff's] rights to investigate and report illegal conduct and therefore could support a jury award of punitive damages.").

In this case, the plaintiff did not put forth any evidence that would support an award of punitive damages. The facts plaintiff put forth in her motion for summary judgment on the merits were these:

> [O]n October 27, 2006, Molino told Cohen and Verde that she had been a government whistleblower against ABS Management, which owned several long-term care facilities in Illinois. Molino told them that it could be a problem if she needed to interact with ABS Management in order to recruit new facilities for the Memory Bridge program. Twenty-one days later, Bast Services terminated Molino's employment.
>
> At the time, Bast Services did not tell Molino why her employment was being terminated. Later, Bast Services gave three reasons for the termination of Molino's employment. First, on October 13, 2006, Molino failed to give "contact information" to a teacher. Second, on October 25, Molino failed to stay with a trainee teacher through an entire training session that a third person was conducting. The third reason, the "one that really gave [Bast Services] pause and finally made [them] arrive at [the decision to terminate Molino's employment]," was the conversation Molino had with Cohen and Verde about her prior whistle-blowing activities. The conversation on October 27 (during which Molino told Cohen and Verde about her prior whistle-blowing activities) was the "finalizing incident," according to Bast Services. Bast was concerned that Molino would not be able to recruit new facilities.

-10-

(Memorandum Opinion at 3-4). The evidence plaintiff put forth was enough to establish her claim, i.e., that Bast Services terminated her employment because of her prior whistle-blowing activity. Plaintiff, however, put forth no additional evidence that would suggest Bast Services acted with actual malice, fraud, deliberate oppression or gross negligence. The evidence is that Bast Services was worried Molino would not be able to recruit additional centers. In other words, Bast Services acted because it was worried it would lose business, not because it was trying to punish Molino for her actions. Plaintiff has not shown that punitive damages are appropriate.

Accordingly, the Court denies plaintiff's request for punitive damages.

**F.     Attorneys' fees**

Finally, the Court considers plaintiff's request for an award of reasonable attorneys' fees, which she is entitled to under the False Claims Act. 30 U.S.C. § 3730(h).

The starting point for calculating reasonable attorneys' fees under a fee-shifting statute is the lodestar method, which is the product of the hours reasonably expended and a reasonable hourly rate. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The Supreme Court has said,

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). In *Gastineau*, the Seventh Circuit affirmed the decision of the district court to reduce an attorney's hourly fee from $250 to $150 per hour where the case was one of the attorney's first involving the Fair Debt Collection Practices Act

and the attorney failed to offer evidence from attorneys of reasonably comparable skill and experience to support his requested rate. *Gastineau*, 592 F.3d at 749. Courts have approved a variety of rates. *See Garcia v. RJB Properties, Inc.*, __ F. Supp.2d __, __, 2010 WL 2836749 at *2 (N.D. Ill. July 19, 2010 (in FLSA case, approving hourly rate of $325 for attorney who submitted affidavits of three employment attorneys who attested to the reasonableness of the rate); *Garcia v. Oasis Legal Finance Oper. Co. LLC*, 608 F. Supp.2d 975, 979-980 (N.D. Ill. 2009) (approving hourly rates of $300 for a partner and $185 for an associate in an Equal Pay Act case where the attorneys filed affidavits from Chicago-area employment attorneys who stated that the rates were at or below market rate); *O'Sullivan v. City of Chi.*, 484 F. Supp.2d 829 (N.D. Ill. 2007) (reducing from $250 to $190 the hourly rate of a mid-level associate in a Title VII case ).

In this case, plaintiff's attorneys seek fees in the amount of $178,409.25. This is the sum of amounts billed by attorney Colleen McLaughlin ("McLaughlin")(119.70 hours billed at rates between $400 and $500 per hour, depending on the year), attorney Elissa Hobfoll ("Hobfoll") (550.5 hours billed at rates between $250 and $295 per hour, depending on the year)[3] and paralegal Christine Miller ("Miller")(50.7 hours billed at $100 per hour). Specifically, McLaughlin seeks an hourly rate of $400 for 2007, $425 for 2008, $450 for 2009 and $500 for 2010. Hobfoll seeks hourly rates of $250 for 2007, $260 for 2008, $275 for 2009 and $295 for 2010. The plaintiff's attorneys have reduced their request by 10% to reflect the fact that some of their work was related to claims against the co-defendant with whom plaintiff settled. Plaintiff's

---

[3]Hobfoll billed 50.7 of these hours at the paralegal rate of $100 per hour, because she spent those hours doing paralegal work.

attorneys were unable to determine which hours were expended against each defendant, although the claims were essentially the same against both defendants.

Defendant Bast Services does not object to the number of hours plaintiff's attorneys billed to her case, but defendant objects to the hourly rates charged by the attorneys. (Defendant makes no objection with respect to the time spent or the hourly rate of the paralegal.) The hourly rates charged by attorneys for Bast Services are less than $300 per hour.

In support of their rates, plaintiff's attorneys filed the declaration of Colleen McLaughlin, who states that she has practiced litigation since 1980 and has, since 1996, had her own firm where she practices primarily employment litigation. McLaughlin states that her associate, Hobfoll, has practiced since her graduation from law school in 2005.

Missing from plaintiff's fee request is any evidence of what comparably skilled and experienced attorneys charge for similar employment litigation in Chicago. The attorneys have not, for example, included affidavits from other attorneys suggesting that Hobfoll's and McLaughlin's rates are market rates.

Plaintiff's attorneys have, however, included information on rates they charge their clients. McLaughlin avers that she charges between $200 and $350 per hour for Hobfoll's time. Attached to McLaughlin's declaration are redacted copies of two August 2008 retainer agreements in which clients have agreed to pay $275 per hour for Hobfoll to review employment documents and $425 per hour for McLaughlin to supervise. Of course, agreeing to that rate for a discrete project is not the same as agreeing to pay that rate for litigation, which generally takes significantly more time. With respect to litigation, McLaughlin has attached to her declaration redacted copies of litigation retainer agreements. One agreement states, "Client agrees to pay a

non-refundable retainer of $5,000.00 towards Attorney's fees.  Attorney agrees to accept monthly installment payments for payment of the retainer.  In the event of settlement or judgment, Attorney agrees to accept as payment *the greater of* 1) the full amount of Attorneys' hourly fee for all hours worked or as awarded by a court; 2) any attorneys' fee negotiated as part of the settlement, and 3) 33 1/3% of the monetary value of the gross recovery obtained on Client's behalf prior to trial and 40% of the gross recovery thereafter."  The agreement also states Hobfoll's hourly rate as $325 and McLaughlin's as $525.  Note, though, that the client who signs this agreement has not agreed to pay those rates.  The client has agreed to pay only $5,000.00 in the event the client does not prevail, regardless of how many hours the attorneys work.  In fact, the client has not agreed to pay the listed rates even if she wins at trial in a fee-shifting case (like this one).  In that event, the client has agreed to pay either (1) "the full amount of Attorneys' hourly fee for all hours worked *or as awarded by a court*" or (3) 40% of the judgment, whichever is greater (emphasis added).  With respect to the first option, it will always be the amount awarded by a court, because no rational plaintiff would choose to pay the "full amount of Attorneys' hourly fee for all hours worked" when, simply by filing a fee petition, the plaintiff can shift to defendant the cost of paying whatever the court awards as fees.  So, plaintiff's attorneys have not convinced the Court that their clients have actually agreed to pay them rates of $325 and $525 per hour for litigation.

Plaintiff's attorneys have also included information about rates that have been approved for them in other cases.  First, plaintiff's attorneys have included an order from the Circuit Court of DuPage County, in which order the court approved hourly rates of $250 for Hobfoll and $400

for McLaughlin in a case under the Illinois Consumer Fraud and Deceptive Trade Practices Case. Second, McLaughlin asserts in her affidavit:

> The last case I litigated in federal court in which my fee had to be approved by the court was *Lueders v. 3M Corp.*, a class action overtime case originally filed in Cook County, but transferred under the Class Action Fairness Act to the Central District of Illinois. Our fees, which were approved by Judge Minn [sic] in April 2010, were billed at $515 for myself and $325 for my associate.

McLaughlin Decl. ¶ 21. Note that McLaughlin does not actually assert that Judge Mihm approved those hourly rates; she asserts merely that Judge Mihm approved the fees, and that her fees "were billed" at those rates. According to the docket sheet in that case, on March 19, 2010 (the final docket entry for the case), Judge Mihm entered a "Final Approval and Judgment Order" approving the settlement of the class action. In the order, Judge Mihm approved as class counsel Hobfoll, McLaughlin and a third attorney, Robin Potter, from a different firm. Judge Mihm also "specifically approve[d] the summary of disbursement attached as Exhibit A to the Joint Motion for Final Approval and directs disbursements as set forth therein." (Judge Mihm's March 19 Order at ¶ 16). Exhibit A, in turn, states that the defendant agreed to make a total payment of $4,988,311.50, of which 1/3 was allocated to attorneys' fees. Nowhere in Exhibit A or Judge Mihm's order are hourly fees mentioned. It appears, then, that what Judge Mihm approved was a settlement in which the defendant agreed to pay attorneys fees worth 1/3 of the total settlement payment. Plaintiff's attorneys do not mention a third recent case in which they asked a court for fees. *See Schlacher v. Law Offices of Phillip J. Rotche & Assoc. PC*, 574 F.3d 852 (7th Cir. 2009). There, the Seventh Circuit affirmed Judge Shadur's decision to significantly reduce to $6,500.00 from $12,495.00 the fees requested by McLaughlin, Hobfoll and two other attorneys in a Fair Debt Collection Practices Act case. The Seventh Circuit agreed

-15-

that McLaughlin's requested hourly rate of $425 was too high given that another lawyer, who was more experienced with the FDCPA, in the case was willing to charge just $260. *Schlacher*, 574 F.3d at 858. With respect to Hobfoll's hourly rate, the Seventh Circuit concluded that the district judge was within its discretion to reduce it from the requested $250, because Hobfoll had been practicing only three years and had not demonstrated what a market rate for FDCPA cases would be.

The Court concludes that Hobfoll and McLaughlin have not met their burden of establishing that their requested rates are reasonable, market rates. Although they have put forth evidence that, by August 2008, clients were willing to pay hourly rates of $275 and $425, respectively, for discrete projects involving the review of employment documents, they have not put forth any evidence that that their litigation clients were willing to pay such high rates for litigation. Nor have they submitted affidavits from other practitioners asserting that their rates are market rates. In similar cases (see above), courts have approved rates between $185 and $190 for attorneys with Hobfoll's level of experience in employment cases. This Court has seen Hobfoll in court numerous times and believes she ably represented Molino. The Court concludes that an hourly rate of $250 is reasonable for Hobfoll. For attorneys with experience similar to McLaughlin's, courts have approved rates between $300 and $325. As McLaughlin points out, a state court approved her hourly rate at $400 in 2009 (for hours billed since 2007). She requests fees up to $500 in this case, but McLaughlin has not provided evidence that the market would agree to an increase of 25% during a time, often referred to as the *Great Recession*, when thousands of local attorneys were laid off. For all of these reasons, the Court concludes that an hourly rate above $400 would not be reasonable for McLaughlin.

Accordingly, the Court awards $164,673.00 in attorneys' fees.[4]

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part Molino's motion for summary judgment as to damages. The Court grants Molino two times back pay in the amount of $178,050.00; interest on back pay in the amount of $10,993.00; special damages for emotional distress in the amount of $25,000.00; and attorneys' fees in the amount of $164,673.00. Plaintiff is also entitled to her costs, which she may claim by filing a Bill of Costs in accordance with Local Rule 54.1.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: March 7, 2011

---

[4] The Court calculated this amount by summing Hobfoll's fees (499.8 attorney hours times $250 plus 50.7 paralegal hours times $100), McLaughlin's fees (119.70 hours times $400) and paralegal Miller's fees (50.7 hours times $100). Then, the Court reduced the amount by ten percent, the amount plaintiff's attorneys agreed to reduce their fees to account for time spent on matters related solely to the second defendant.